**INDEPENDENT GRAVEL COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 77–1269.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1977.

Decided Dec. 27, 1977.

James B. Fleischaker, Roberts & Fleischaker, Joplin, Mo., for petitioner.

Allison W. Brown, Jr., Deputy Asst. Gen. Counsel, N. L. R. B., Washington, D. C., argued, Morton Namrow, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on brief, for respondent.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and STEPHENSON, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

This case is before the court upon petition of the Independent Gravel Company (hereinafter the Company) to review and set aside the order of the National Labor Relations Board issued December 7, 1976, reported at 227 NLRB No. 7. The Board has filed a cross-application for enforcement of its order. Jurisdiction is established under § 10(e) and (f) of the National Labor Relations Act, as amended, 29 U.S.C. §§ 151 *et seq.*, hereinafter called the Act.

The complaint, based upon a charge filed by employee Stanley Mathis, charged the Company with violation of § 8(a)(3) and (1) of the Act by laying off employees Mathis, Bildeau and Inman. The Administrative Law Judge, A.L.J., after conducting an evidentiary hearing, upheld the violations charged. The Board affirmed the decision of the A.L.J. The Board's order requires the Company to cease and desist from the unfair labor practices found and from in any other manner interfering with, restricting or coercing its employees in the exercise of their statutory rights. Affirmatively, the order requires the Company to offer reinstatement to Mathis, Bildeau and Inman, to make them whole for any loss of pay suffered and to post appropriate notice.

The primary issue presented is whether there is substantial evidence on the record as a whole to support the Board's determination and order. We give a negative answer on such issue, vacate the Board's order and deny enforcement for the reasons hereinafter set out.

The Company is a corporation engaged in producing and selling gravel and related products. Its business has been subject to seasonal variations. Many of its products are used in paving and road work. The winter months are the slowest in the amount of work, increasing in the spring. Traditionally, the Company has laid off employees in the winter, but in the past such

layoffs have not been given to its truck drivers.

Shortly after 7:00 a. m. on February 2, 1976, plant manager Hatfield told Mathis, Bildeau and Inman that they were being laid off for lack of work and that they should apply for unemployment insurance and leave their names and telephone numbers so that they could be called back when business picked up. The Company contends that the layoffs were based solely on economic reasons. The A.L.J. determined:

I find that, while Respondent had ample economic justification for its actions, the motivating consideration for the layoff of the truck drivers was not economic, but, rather, their attendance at the union meeting on the preceding day.

■ Other employees were also laid off, some of whom did not attend the February 1 meeting. All layoffs were based strictly on the least seniority. We find that the record fully supports economic justification for the layoffs. The Company certainly has a right to temporarily lay off employees for economic reasons provided no discrimination or anti-union bias is involved.

■ On Sunday, February 1, 1976, between twenty and thirty employees met at the Joint-and-a-Half tavern to consider union organization. The tavern is located on the route from Hatfield's home to the plant. Hatfield made two trips from his home to the plant on February 1 to inspect some on-going repair work. He was accused of engaging in surveillance of his employees and attempting to create the impression of surveillance. With respect to such charge, the A.L.J. determined:

I find that, on February 1, 1976, Hatfield was neither engaged in surveillance, nor attempting to create the impression that employee union activity was under surveillance. I conclude that the allegation that Respondent violated Section 8(a)(1) in that regard must be dismissed.

Such determination is supported by the record.

We find no substantial evidence in the record that Hatfield at the time of the layoffs knew of the February 1 meeting or that he was aware of which employees attended the meeting. The evidence established that some twenty to thirty employees attended the meeting. The intention to hold the meeting was kept secret. Invitations to the meeting were extended orally. The evidence reveals the names of some who attended the meeting, including Mathis, Bildeau and Inman, and some who did not. But no witness was able to name a substantial number of those attending. There is also evidence that certain employees were not at the meeting. Twelve employees were laid off on February 1, including Mathis, Bildeau and Inman, who held the least seniority. Included in the layoffs were some employees not identified as attending the meeting. Others who had attended the meeting were not laid off. At the time of the hearing on May 18, 1976, six of the twelve employees who had been laid off had been reinstated. Inman was rehired on March 29, 1976, and Mathis on March 31, 1976, in accordance with their seniority.

The record is completely barren of substantial evidence that manager Hatfield or any officer of the Company had knowledge on the morning of February 2 that there had been a union organization meeting on February 1, or the identity of persons who attended the meeting. There is no evidence of any union animus. Hatfield denied knowledge of the meeting on February 2 and the identity of employees attending. The A.L.J. held:

Hatfield initially testified that he first heard about the February 1 union meeting a day or two later, and that he was unaware of that event on the morning of February 2 when he effectuated the layoffs. He also testified that he never learned the identity of the employees who attended the meeting. However, Hatfield later conceded that when he learned through the "grapevine" that the meeting had occurred, he was also informed of the names of the employees who attended. Hatfield's own testimony, that he learned of the meeting a day or two after it occurred, permits the inference that he

was aware of it on the morning of February 2. In light of all the circumstances, I so infer. Hatfield's further testimony, denying specific knowledge as of the morning of February 2, is not credited.

 The burden of proof is on the General Counsel to establish a violation. The Board's findings must be based upon substantial evidence. The Board's findings may not rest on suspicion, surmise, implications, or plainly incredible evidence. A discharge cannot be held to be discriminatory without proof that the employer had knowledge of the employee's union activity. *NLRB v. Garner Tool and Die Mfg., Inc.,* 493 F.2d 263, 268 (8th Cir. 1974).

No reasonable inference can be drawn from Hatfield's statement that he learned through the grapevine a day or two after the February 1 meeting of the meeting and its participants prior to the time he made the layoffs on the early morning of February 2. Since the General Counsel offered no proof of such knowledge prior to the layoffs, there is nothing for the Company to rebut.

 The A.L.J.'s credibility findings are of course entitled to respect but they must be based upon substantial evidence on the record as a whole. Hatfield's statement that he learned of the union activity a day or two after the meeting was not pinned down to a time prior to the layoffs. The statement as to time is ambiguous. Such statement standing alone, particularly in the light of Hatfield's disclaimer of knowledge at the time of the discharges, does not constitute substantial evidence to support the Board's findings. Additionally, the Board's position is weakened by its admission that economic need for the layoffs had been established.

The A.L.J. makes much of the fact that Luttrell, a recent retiree, at his request was rehired on February 10, 1976. With respect to this, the A.L.J. states:

> I am satisfied that Respondent did, in fact, have a policy of accepting retirees who desired to return to work. Indeed, in hiring Luttrell during a slack period, and allowing him to perform odd jobs and

"make-work", Respondent acted in a manner perfectly consistent with its policy of at least 20 years, namely to make-work for truckdrivers rather than lay them off during slow periods.

Possibly the reemployment of the retiree in light of the recent layoffs might not reflect good business judgment. However, such event was not induced by any discriminatory purpose and affords inadequate support for a finding of violation of the Act. The fact that in other years truck drivers were kept on the job and shifted to other work in slack seasons is not an adequate basis for upholding the violations charged.

The Board's order is set aside, vacated, and enforcement is denied.